[No. A024807. First Dist., Div. Four. June 25, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT JOE HUNT, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Certified for publication except as to "THE BOOKING PHOTOGRAPH" section at page 672. (Cal. Rules of Court, rules 976(b) and 976.1.)

**COUNSEL**

Jonathan M. Purver, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Herbert F. Wilkinson and Landra E. Rosenthal, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**ANDERSON, P. J.**—Appellant, Robert Joe Hunt, was charged by information with violating Penal Code section 261, subdivision (2)[1] (forcible rape) and Vehicle Code section 10851 (auto theft). A prior conviction of Health and Safety Code section 11352 (sale of a controlled substance) was alleged pursuant to section 667.5, subdivision (b). Appellant pled guilty to the auto theft charge and following a jury trial was convicted of forcible rape. At the conclusion of the trial, he admitted the prior conviction and prior prison term within the meaning of section 667.5, subdivision (b). Appellant was sentenced to concurrent terms of eight years for the rape conviction and eight months for auto theft; his sentence was enhanced by one year for the prior prison term (§ 667.5, subd. (b)).

Appellant appeals the conviction on the following grounds: (1) The trial court erred in admitting a "booking photograph" of appellant; and (2) the trial court erred in permitting the use of three prior convictions to impeach appellant's credibility.

### The Facts

On April 27, 1983, Lisa G. stopped at the Casino bar in Bodega, California, to telephone her mother and to have a drink on her way en route from Santa Rosa, California, to her mother's home in Occidental, California. While at the bar, appellant and Lisa engaged in conversation about some young boys who were playing pool there. Lisa left the bar a few moments later.

While continuing on toward her mother's house, Lisa stopped on the side of Joy Road to find her toothbrush. Appellant pulled up alongside her and asked if she needed help. Lisa responded that everything was fine and that she had to be moving on. Appellant asked her if she wanted to smoke some marijuana; she declined. He then asked her for directions to Occidental and she told him to follow her into town.

Lisa went to a Union 76 station in Occidental to inquire about some repairs on her car; she again telephoned her mother to say she would be home soon. Appellant, who had followed her there, invited her to join him for a drink and they went to Fiori's bar in Occidental. The two had a couple of drinks at Fiori's and engaged in a friendly conversation, with no mention of sex. Lisa left the bar alone, stopping first at the Union 76 station before driving on toward her mother's house.

---

[1]Unless otherwise indicated, all statutory references are to the Penal Code.

As Lisa drove up Bittner Road, she saw appellant standing next to his car which was parked at a turnout; he waved her over. She stopped to see what he wanted. Appellant told her that he wanted to show her something and led her away from the road. She agreed to go with him at first because their conversation earlier that evening had been friendly and she trusted him. However, when Lisa told him she had to leave, appellant responded by saying, "you're not going anywhere."

A struggle then ensued. Appellant knocked Lisa to the ground and hit her. She believed he might kill her and stopped struggling. Appellant then raped Lisa. He ordered her not to move until she heard his car leave, but a few moments later she ran up to the road, saw appellant's license plate number and immediately wrote it down.

Lisa could not find her keys so she flagged down a passing motorist who took her back to the Union 76 station. She told one of the service station employees that she had been raped. The employee phoned the sheriff's department and her mother and then took her back to the turnout to search for her car keys.

When Deputy Sheriff Pater arrived at the Union 76 station, he noticed a bruise on Lisa's arm, a bright red cheek and abrasions on her lower back and buttocks. He took Lisa back to the turnout in an attempt to recover any physical evidence at the scene.

Later that evening, Lisa underwent a rape examination. A nurse practitioner found bruises and abrasions on her back, arm and buttocks. A laboratory test of her pants disclosed evidence of semen.

An all points bulletin was then issued for appellant's arrest; he was apprehended on Occidental Road near Santa Rosa that same evening. At trial appellant testified that he did have sexual intercourse with Lisa but claimed that it was consensual.

### The Booking Photograph*

. . . . . . . . . . . . . . . . . . . . .

### Admissibility of the Prior Convictions

██ Immediately prior to trial appellant moved *in limine* to bar impeachment should he testify by admissions of three prior felony convictions—auto

---

*The Booking Photograph section of this opinion is not certified for publication. (See fn., *ante,* at p. 668.)

theft (1965), burglary (1966), and sale of heroin (1977). Relying on the plain language of article I, section 28, subdivision (f), of the California Constitution (Proposition 8),[3] the trial court denied appellant's motion stating that under Proposition 8 it had no discretion to exclude prior convictions.

Appellant asserts that even after the enactment of Proposition 8, due process demands that "remote" and "irrelevant" prior convictions be subject to the trial court's discretion. He contends that under the rule of *People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1], a trial court would have excluded both the auto theft and burglary convictions due to their remoteness and the sale of heroin conviction because it bears only slightly on credibility and is therefore irrelevant.

This issue has recently been addressed by the California Supreme Court in *People* v. *Castro* (1985) 38 Cal.3d 301 [211 Cal.Rptr. 719, 696 P.2d 111]. Defendant Maria Castro was convicted by a jury of receiving stolen property (§ 496). Before trial, the court denied Castro's motion to bar impeachment with two then unspecified priors should she elect to testify on the ground that all prior felonies are admissible under article I, section 28, subdivision (f), of the California Constitution. Castro did testify at trial and both priors (possession of heroin and possession of heroin for sale) were admitted. (At pp. 305, 317.)

■ The *Castro* court set forth a two-part analysis for a trial court to follow in determining whether a prior felony is admissible for impeachment purposes. First, the trial court must determine whether a prior conviction involves "moral turpitude." If the court finds that it does not involve moral turpitude, the prior may not be admitted. Second, if the prior does involve moral turpitude, the court must then exercise its discretion under Evidence Code section 352 in deciding whether to admit or exclude the prior. (*People* v. *Castro, supra,* 38 Cal.3d at p. 316.)

■ Applying the above rules, the Supreme Court found that the trial court in *Castro* had committed two errors. First, the court found that while

---

[3]Article I, section 28, subdivision (f), of the California Constitution provides in full: "Use of Prior Convictions. Any prior felony conviction of any person in any criminal proceeding, whether adult or juvenile, shall subsequently be used without limitation for purposes of impeachment or enhancement of sentence in any criminal proceeding. When a prior felony conviction is an element of any felony offense, it shall be proven to the trier of fact in open court."

We note that the trial court was correct in using Proposition 8 as the measure of admissibility of appellant's prior conviction since the instant offense was committed after the effective date (June 9, 1982) of article I, section 28, subdivision (f), of the California Constitution. (*People* v. *Smith* (1983) 34 Cal.3d 251, 262 [193 Cal.Rptr. 692, 667 P.2d 149].)

possession of heroin for sale does involve moral turpitude because it involves the intent to corrupt others, mere possession of heroin does not. (*People* v. *Castro, supra,* 38 Cal.3d at p. 317.) Thus, the trial court erred in allowing the prosecution to impeach defendant's credibility with the simple possession charge. (*Ibid.*) Second, the court erred in stating that it had no discretion with respect to the admission of either of the priors. (*Ibid.*) However, applying the standard in *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243], the *Castro* court found that the errors were harmless. (*People* v. *Castro, supra,* 38 Cal.3d at pp. 318-319.)

Applying the rule in *Castro* to the facts of the present case, we must first determine whether appellant's prior convictions (sale of heroin, auto theft and burglary) involved moral turpitude.

■ The Supreme Court gives us little guidance in ascertaining which crimes involve "moral turpitude." We are told that crimes which reveal a defendant's dishonesty, "general readiness to do evil," "bad character" or "moral depravity" do involve moral turpitude. (*People* v. *Castro, supra,* 38 Cal.3d at p. 315.) ■ *Castro* makes clear that appellant's prior conviction for the sale of heroin does involve moral turpitude as it involves the intent to corrupt others. (*Id.,* at p. 317.) But where do auto theft and burglary weigh on this scale of possession versus possession for sale?

■ First, we note that even under the more narrow standard of *People* v. *Beagle, supra,* 6 Cal.3d 441, and its progeny which require that a prior conviction involve *dishonesty,* auto theft was admissible for impeachment purposes.[4] We logically infer that under the broader moral turpitude standard, the prior auto theft conviction is necessarily admissible. (See *People* v. *Castro, supra,* 38 Cal.3d at p. 317, fn. 13.)

■ Secondly, we turn to the substantial body of law defining crimes involving moral turpitude which has developed in the area of attorney discipline. In *In re Fahey* (1973) 8 Cal.3d 842 [106 Cal.Rptr. 313, 505 P.2d 1369, 63 A.L.R.3d 465], a proceeding involving attorney discipline, our Supreme Court approved a definition of moral turpitude "as 'an act of baseness, vileness or depravity in the private and social duties which a man owes to his fellowmen, or to society in general, contrary to the accepted and customary rule of right and duty between man and man.'" (At p. 849.) The court elaborated further by explaining that conviction of certain crimes establishes moral turpitude on its face. (*Ibid.*) The court need not look to

---

[4]In *People* v. *Buss* (1980) 102 Cal.App.3d 781, 783-784 [162 Cal.Rptr. 515], the court found that a prior auto theft conviction did reflect upon honesty and veracity but nevertheless ruled it inadmissible under *Beagle* because the prior was substantially similar to the crime charged.

the circumstances surrounding the offense because (1) those crimes necessarily involve the intent to defraud or intentional dishonesty for the purpose of personal gain; or (2) the crime, such as murder or a serious sexual offense, is so extremely repugnant to accepted moral standards that it is clear that moral turpitude is involved. (*Ibid.*) ■ Auto theft clearly involves intentional dishonesty for the purpose of personal gain.[5] Accordingly, we hold that conviction alone of auto theft compels the conclusion that moral turpitude was involved.

■ Finally, we must determine whether appellant's prior burglary conviction involved moral turpitude. It is not clear from the record in the present case whether appellant was convicted of burglary with the intent to commit theft or burglary with intent to commit a felony.[6] Under prior law this distinction was often considered significant in that some courts found that only a burglary involving theft reflected on a witness' honesty and veracity (see, e.g., *People* v. *Thompson, supra,* 127 Cal.App.3d at p. 16). Conviction of a burglary involving theft necessarily involves moral turpitude because it reflects on a witness' dishonesty. (See *In re Rothrock, supra,* 16 Cal.2d at p. 454.) Under *Castro,* conviction of a crime of violence, such as burglary to commit an act of violence, does denote moral turpitude even though it may not involve dishonesty. (*People* v. *Castro, supra,* 38 Cal.3d at p. 315.) Thus, regardless of the nature of appellant's burglary, we find that it necessarily involved moral turpitude.

■ Since all three of the challenged prior convictions meet the threshold requirement of involving moral turpitude, it was within the discretionary power of the court to grant or deny appellant's motion in accordance with Evidence Code section 352. (*People* v. *Castro, supra,* 38 Cal.3d at p. 316.) Unfortunately, however, the failure of the trial court, in the present case, to exercise its discretion was clearly error under the later acquired wisdom of *Castro.*[7] We must now determine whether that error requires reversal.

---

[5]Even as early as 1940, the California Supreme Court in *In re Rothrock* (1940) 16 Cal.2d 449 [106 P.2d 907, 131 A.L.R. 226], recognized that theft and moral turpitude are practically synonymous. The court stated: "In cases such as those involving convictions of murder, forgery, extortion, bribery, perjury, robbery, embezzlement and other *forms of theft,* no difficulty would attend the determination of the question of moral turpitude from a consideration of the record of conviction alone." (*Id.,* at p. 454, italics added.)

[6]There is, however, an inference that theft was involved. Appellant's presentence report indicates that he was simultaneously convicted of burglary and theft (see *People* v. *Thompson* (1981) 127 Cal.App.3d 13, 19 [179 Cal.Rptr. 328]), and appellant testified that he had never been convicted of a crime involving sex or violence.

[7]Of course, in hindsight, it is easy to declare that the trial court's failure to exercise discretion was error but we note that the trial in this case was held nearly 17 months before the Supreme Court's decision in *Castro.* At the time of trial, the court's ruling was quite understandable in light of the language of subdivision (f), *supra,* footnote 3.

■ Just as our Supreme Court did in *Castro,* we apply the *Watson* standard in evaluating the prejudicial effect of the error. (*People* v. *Castro, supra,* 38 Cal.3d at pp. 318-319.) Under *People* v. *Watson, supra,* 46 Cal.2d 818, 837, reversal is permitted only if after a review of the entire record "the court is of the opinion 'that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.'" ■ Our review of the record herein convinces us that the trial court's error was nonprejudicial.

The case against appellant was strong. The victim testified in great detail about the events surrounding the rape and defense counsel was unable to impeach her testimony in any significant way. Her testimony was strongly corroborated by numerous witnesses.

A nurse practitioner, who performed a rape examination on Lisa, testified that Lisa had bruises and abrasions on her arm, lower back and buttocks; a dried substance found between her thigh and buttocks tested positive for sperm. The deputy sheriff, who was called to the scene, noticed a bright red mark on Lisa's cheek which was consistent with her claim that appellant had slapped her face. He accompanied her to the scene and recovered her clothing which had been muddied during the rape.

An employee of the Union 76 station, who saw the victim shortly after the rape, testified that Lisa looked upset and dirty; Lisa immediately told her that she had been raped. The testimony of the officer, who arrested appellant, corroborated Lisa's testimony that appellant had marijuana in his possession.

Appellant presented a consent defense. Defense counsel called two witnesses who testified regarding the actual physical dimensions of the turnout where the rape occurred and the condition of Bittner Road—an attempt to demonstrate that the victim's story was implausible. The manager of Fiori's bar testified that appellant and Lisa's conversation at the bar appeared to be friendly.

Appellant himself elected to take the stand, despite the ruling that the challenged priors would be admissible to impeach him, and he related his version of the events. Moreover, in addition to the three challenged prior convictions, appellant admitted to having been convicted of the following felonies: auto theft (1966), escape from prison (1966), possession of stolen credit cards (1982) and auto theft (1983). Appellant did not move at trial to bar impeachment with these four felonies; thus they were properly admitted. We therefore conclude that any prejudicial effect of the court's error in failing to exercise its discretion with regard to the three challenged felonies

was minimal. The jury was already aware of appellant's extensive criminal history and none of the challenged priors (auto theft, burglary and sale of heroin) were sex crimes. Accordingly, we find that it is not reasonably probable that even had the court excluded those three priors, a result more favorable to appellant would have been reached. (*People* v. *Watson, supra,* 46 Cal.2d at p. 837.)

The judgment is affirmed.

Channell, J., and Sabraw, J., concurred.